UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JAMES PERSAUD, KEVIN DIAZ, MICHAEL DIAZ,
LUIS VIERA, ANTHONY BONTUYAN, MARIA           Docket No. 16-cv-05994 (ER)
DELVALLE, ROSA PEREZ, and GLADYS
GONZALES                                       **FIRST AMENDED
                                               COMPLAINT**

                              Plaintiffs,

               -against-

                                               **JURY TRIAL DEMANDED**

D & H LADIES APPAREL LLC, AB & SONS GROUP,
LLC,  ISAAC CHETRIT, and ISAK PEREZ,

                              Defendants.
-------------------------------------------------------------------X

       JAMES PERSAUD, MARC KEVIN DIAZ, MICHAEL DIAZ, LUIS VIERA,

ANTHONY BONTUYAN, MARIA DELVALLE, ROSA PEREZ and GLADYS GONZALES

(collectively, "Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as

and for their Complaint against D & H LADIES APPAREL LLC, AB & SONS GROUP, LLC,

ISAAC CHETRIT, and ISAK PEREZ (collectively, "Defendants"), allege upon personal

knowledge as to themselves and their own actions, and upon information and belief as to all

other matters, as follows:

## NATURE OF CASE

       1.      This is a civil action based upon violations that the Defendants committed of

Plaintiffs' rights guaranteed to them by:

      i.      The overtime provision the Fair Labor Standards Act ("FLSA");

     ii.      The overtime provision of the New York Labor Law ("NYLL");

    iii.      The child labor law provision of the NYLL (N.Y. Lab. Law § 143);

    iv.      The minimum wage provision of the NYLL (N.Y. Lab. Law § 652(1));

v.    The minimum wage provision of the FLSA (29 U.S.C. §206(a));

vi.    The anti-retaliation provision of the NYLL (N.Y. Lab. Law § 215(1));

vii.    The anti-retaliation provision of the FLSA (29 U.S.C. § 215(a)(3));

viii.    The spread of hours requirement of the New York State regulation, 12 NYCRR § 142 *et seq.*;

ix.    The aiding and abetting provision of the New York State Human Right Law ("NYSHRL");

x.    The requirement that employees furnish employees with an accurate wage notice at the time of hiring, and on an annual basis, containing specific categories of information under the NYLL § 195, which is the New York Wage Theft Prevention Act (the "NYWTPA"); and

xi.    Any other cause(s) of action that can be inferred from the facts set forth herein.

2.    Plaintiffs bring this action for Defendants' willful violations of Federal and New York State laws requiring minimum wage and overtime pay for employees, and proper compensation for spread of hours, among other violations.

3.    Defendants committed violations of these laws by engaging in a systematic scheme of failing to pay Plaintiffs their statutorily required minimum wages, their statutorily required overtime compensation and failing to properly compensate Plaintiffs for spread of hours, among other violations. Further, when Plaintiffs objected to Defendants' unlawful practices and requested overtime wages, the Defendants engaged in retaliatory conduct.

## JURISDICTION AND VENUE

4.      The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et. seq*. The supplemental jurisdiction of the Court is invoked pursuant to pursuant to 28 U.S.C. § 1367 over all state law claims.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants resides within this judicial district.

## DEMAND FOR A JURY TRIAL

6.      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury in this action.

## PARTIES

7.      At all relevant times herein, James Persaud ("Mr. Persaud") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

8.      At all relevant times herein, Marc Kevin Diaz ("Marc Diaz") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

9.      At all relevant times herein, Michael Diaz ("Michael Diaz") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

10.      At all relevant times herein, Luis Viera ("Mr. Viera") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

11.     At all relevant times herein, Anthony Bontuyan ("Mr. Bontuyan") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

12.     At all relevant times herein, Maria Delvalle ("Ms. Delvalle") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

13.     At all relevant times herein, Rosa Perez ("Ms. Perez") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

14.     At all relevant times herein, Gladys Gonzales ("Ms. Gonzales") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, and NYWTPA.

15.     At all relevant times herein, D&H LADIES APPAREL LLC ("D&H") was and is a domestic limited liability company, with its principal place of business located at 25 West 36th Street, Ground Floor, New York, NY, 10018, in the City and the State of New York.

16.     At all relevant times herein, D&H was and is an "employer" within the meaning of the FLSA and NYLL. D&H's qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA.  Additionally, D&H is an "employer" that "employs" four or more "employees" within the meaning of the NYSHRL.

17.     At all relevant times herein, AB & SONS GROUP, LLC ("AB & Sons") was and is a domestic limited liability company, with its principal place of business located at 25 West 36th Street, 2nd Floor, New York, NY, 10018, in the City and the State of New York.

18.     At all relevant times herein, AB & Sons was and is an "employer" within the meaning of the FLSA and NYLL. AB & Sons' qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA.  Additionally, AB & Sons is an "employer" that "employs" four or more "employees" within the meaning of the NYSHRL.

19.     At all relevant times herein, Defendant Isaac Chetrit ("Mr. Chetrit") was and is an owner, shareholder, director, supervisor and managing agent of D&H who actively participated, and continues to actively participate, in the day-to-day operations of D&H, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant D&H.

20.     At all relevant times herein, Mr. Chetrit was and is an owner, shareholder, director, supervisor and managing agent of AB & Sons who actively participated, and continues to actively participate, in the day-to-day operations of AB & Sons, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant AB & Sons.

21.     At all times hereinafter mentioned, Mr. Chetrit exercised control over the terms and conditions of Plaintiffs' employment, in that he had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

22.     Defendant Isak Perez ("Mr. Perez") was and is a resident of the State of New York.  At all times hereinafter mentioned, he was a manager who exercised control over the terms and conditions of Plaintiffs' employment, in that he had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

## FACTS

23.     Defendant D&H is a wholesaler. It purchases clothing from Taiwan and China, and sells the merchandise wholesale to retailers, wholesalers and merchants.  The merchandise is stored, sorted, packed and eventually shipped from D&H's warehouse located at 5900 Decatur Street, Queens, NY 11385.

24.     D&H also has a retail line of business and sells women's' clothing in its stores located at 25 W 36th St #1, New York, NY 10018, and other locations.

25.     Upon information and belief, Defendant D&H  has several subsidiaries, including but not limited to, Defendant AB & Sons and Aini, both of which are similarly involved in wholesaling.

26.     The Plaintiffs herein worked in D&H's warehouse located at 5900 Decatur Street, and were involved in the labor of storing, sorting, packing, and shipping the merchandise.

27.     During the course of the Plaintiffs' employment, the conditions at the warehouse were deplorable. During the winter, the warehouse was freezing and there was little or no heat. During the summer, the heat was unbearable as there was no ventilation. The Plaintiffs were expected to carry heavy boxes and were not given trolleys. The boxes were stacked high and there was no ladders for accessing the highest boxes. In violation of the OSHA regulations, the

warehouse exits were blocked and the windows were barred, so that there was only one means of entrance and egress. Further, the supervisors regularly hurled degrading insults at the Plaintiffs, and also threatened physical violence.

**Specific Allegations of James Persaud**

28.     In the Fall of 2011, Defendants hired Mr. Persaud to work in their warehouse located at 5900 Decatur St. His duties included filling out order forms, loading the company's trucks with boxes, unloading the trucks when deliveries arrived, and stacking and storing the boxes in the warehouse.

29.     For the duration of his employment, Mr. Persaud was a full-time employee of Defendants.  He routinely worked over eight (8) hours a day, six (6) days per week and at least forty-eight (48) hours per week.

30.     Despite working at least forty-eight (48) hours per week, Defendants failed to pay Mr. Persaud the statutorily-mandated rate of one and one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

31.     Defendants routinely paid Mr. Persaud for his Sunday hours, *in cash only*, so as to conceal their unlawful wage practices as set forth above.

32.     Similarly, when Defendants asked Mr. Persaud to stay late for a few extra hours, he would be compensated *in cash only*, and not at the statutorily-mandated rate of one and one-half his straight-time hourly rate of pay.

33.     Defendants willfully and intentionally failed to pay Mr. Persaud his lawful wages.

34.     Mr. Persaud asked Mr. Chetrit to pay overtime compensation as required by state and federal law, but Mr. Chetrit ignored him.

35. On or about April 15, 2016, soon after Mr. Persaud lodged a complaint about his overtime wages, Defendants engaged in retaliatory conduct and unlawfully terminated his employment.

**Specific Allegations of Michael Diaz**

36. In the Fall of 2011, when Michael Diaz was sixteen years old (D/O/B: 01/07/1995), Defendants hired him to work in their warehouse located at 5900 Decatur St. His duties included loading the company's trucks with boxes, unloading the trucks when deliveries arrived, and then stacking and storing the boxes in the warehouse. He would also put tags on clothing, and sort boxes based on location.

37. For the duration of his employment, Michael Diaz was a full-time employee of Defendants. He routinely worked over twelve (12) hours a day, four (4) days per week, Monday-Thursday, often without taking a proper lunch break, and (8) hours a day on Fridays and Sundays. Thus, Michael Diaz worked at least sixty-four (64) hours per week.

38. Michael Diaz' weekly compensation was meager and in violation of the law as Defendants failed to pay him the statutorily-mandated minimum wage.

39. Additionally, Despite working at least sixty-four (64) hours per week, Defendants failed to pay Michael Diaz the statutorily-mandated rate of one and one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

40. Michael Diaz was also not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day.

41. Michael Diaz asked his immediate supervisor, Isak Perez, for additional compensation but Perez told him to "shut up and get back to work."

42.     Defendants willfully and intentionally failed to pay Michael Diaz his lawful wages.

43.     During the course of his employment, Michael Diaz was subject to a continuous stream of hostile and offensive comments, such as "you are worthless," and "a monkey could do a better job than you."

**Specific Allegations of Marc Kevin Diaz**

44.     On or about 2009 or 2010 Defendants hired Marc Diaz to work in their warehouse located at 5900 Decatur St. His duties included loading the company's trucks with boxes, unloading the trucks when deliveries arrived, and then stacking and storing the boxes in the warehouse. He would also put tags on clothing, and sort boxes based on location.

45.     For the duration of his employment, Marc Diaz was a full-time employee of Defendants. He routinely worked over twelve (12) hours a day, four (4) days per week, Monday-Thursday, often without taking a proper lunch break, and (8) hours a day on Fridays and Sundays. Thus, Marc Diaz worked at least sixty-four (64) hours per week.

46.     Marc Diaz asked Mr. Chetrit to pay overtime compensation as required by state and federal law, but Mr. Chetrit ignored him.

47.     On or about 2013, soon after Marc Diaz lodged a complaint about his overtime wages, Defendants engaged in retaliatory conduct and unlawfully terminated his employment.

48.     Subsequently, Kevin Diaz filed a claim with the Department of Labor for overtime wages, and additional labor law violations.

49.     On or about April 2015, the Department of Labor determined that Defendant D&H Ladies Apparel, LLC had violated the labor law, and held Isaac Chetrit personally liable for wages owed.

**Specific Allegations of Luis Viera**

50.     On or about July 2014, Defendants hired Mr. Viera to work in their warehouse located at 5900 Decatur St. His duties included loading the company's trucks with boxes, unloading the trucks when deliveries arrived, and then stacking and storing the boxes in the warehouse.  Mr. Viera remained employed with Defendants until on or about February 2015.

51.     For the duration of his employment, Mr. Viera was a full-time employee of Defendants. He routinely worked over eight (8) hours a day, six (6) days per week, and for at least one evening a week, he worked an additional two hours.  Thus, Mr. Viera worked at least fifty (50) hours per week.

52.     Despite working at least fifty (50) hours per week, Defendants failed to pay Mr. Viera the statutorily-mandated rate of one and one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

53.     Defendants routinely paid Mr. Viera for his Sunday hours, *in cash only*, so as to conceal their unlawful wage practices as set forth above.

54.     Mr. Viera asked Defendants several times for his overtime wages, but they ignored his requests.

55.     Defendants willfully and intentionally failed to pay Mr. Viera his lawful wages.

56.     Defendants frequently demanded that Plaintiffs work through their lunch break. On one cold Friday in February 2015, Mr. Viera began working at 7:00 a.m. and he continued working all day in a lobby with no heat.  After eight hours, when Defendant Perez had still not

permitted the Plaintiffs to take a break, Mr. Viera asked for a break. When Defendant Perez refused, Mr. Viera protested.

57.     That very same day, after Mr. Viera lodged a complaint about Defendants' labor law violations, Defendants engaged in retaliatory conduct and unlawfully terminated his employment.

**Specific Allegations of Anthony Bontuyan**

58.     In October 2014, Defendants hired Mr. Bontuyan to work in their warehouse located at 5900 Decatur St. His duties included filling out order forms, loading the company's trucks with boxes, unloading the trucks when deliveries arrived, and stacking and storing the boxes in the warehouse.

59.     For the duration of his employment, Mr. Bontuyan was a full-time employee of Defendants.  He routinely worked over nine (9) hours a day, five (5) days per week and at least forty-five (45) hours per week.

60.     Despite working at least forty-five (45) hours per week, Defendants failed to pay Mr. Bontuyan the statutorily-mandated rate of one and one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

61.     Defendants willfully and intentionally failed to pay Mr. Bontuyan his lawful wages.

62.     Furthermore, Defendants lied to Mr. Bontuyan about his compensation. They represented that he was earning $11.25 per hour, when in actuality, he was earning approximately $8.00 per hour.

**Specific Allegations of Maria Delvalle**

63.     In July 2011, Defendants hired Ms. Delvalle to work in their warehouse located at 5900 Decatur St. Her duties included packing boxes, affixing tags on clothing, and recording orders.  Her employment ended on or about April 2015.

64.     For the duration of her employment, Ms. Delvalle was a full-time employee of Defendants. She routinely worked over eight (8) hours a day, six (6) days per week and at least once a week, she stayed late, and worked an additional two hours. Thus, Ms. Delvalle worked at least fifty (50) hours per week.

65.     Despite working at least fifty (50) hours per week, Defendants failed to pay Ms. Delvalle the statutorily-mandated rate of one and one-half his straight-time hourly rate of pay for any hours that she worked each week in excess of forty.

66.     Defendants compensated Ms. Delvalle *in cash only*, during the entire course of her employment, so as to conceal their unlawful wage practices as set forth above.

67.     When Ms. Delvalle was first hired, she was paid approximately $250.00 per week, in cash.  Subsequently, she received approximately $300.00 per week in cash, and then $325.00 per week, in cash. Additionally, Ms. Delvalle was paid approximately $70 cash for her Sunday hours.

68.     For a period of six to eight months, there was an increase in the workload, and Ms. Delvalle was compelled to work twelve (12) hours per day, totaling seventy (70) hours a week. She was not paid the statutorily-mandated overtime rate of pay for these overtime hours.

69.     Defendants willfully and intentionally failed to pay Ms. Delvalle her lawful wages.

70.     Further, Ms. Delvalle was not compensated for the legally mandated spread-of-hours pay for hours worked in excess of ten (10) hours a day.

71.    Ms. Delvalle's working conditions were challenging. During the winter, the warehouse was always cold, the heat was never adequate, and the workers had to wear coats and gloves. The Defendants often asked the women to carry heavy boxes, and even when two women shared the weight of the box, it was still too heavy. When Ms. Delvalle asked Defendants for a trolley, her request was denied, and she had no alternative but to continue lugging heavy boxes, despite the pain it caused. In fact, Ms. Delvalle's continues to have pain today as a result of the Defendants' oppressive work conditions.

**Specific Allegations of Rosa Perez**

72.    In July 2011, Defendants hired Ms. Perez to work in their warehouse located at 5900 Decatur St. Her duties included packing boxes, affixing tags on clothing, and recording orders.  Her employment ended on or about April 2015.

73.    For the duration of her employment, Ms. Perez was a full-time employee of Defendants. She routinely worked over eight (8) hours a day, six (6) days per week and at least once a week, she stayed late, and worked an additional two hours. Thus, Ms. Perez worked at least fifty (50) hours per week.

74.    Despite working at least fifty (50) hours per week, Defendants failed to pay Ms. Perez the statutorily-mandated rate of one and one-half her straight-time hourly rate of pay for any hours that she worked each week in excess of forty.

75.    Defendants compensated Ms. Perez *in cash only*, during the entire course of her employment, so as to conceal their unlawful wage practices as set forth above.

76.    When Ms. Perez was first hired, she was paid approximately $250.00 per week, in cash.  Subsequently, she received approximately $300.00 per week in cash, and then $325.00 per week, in cash. Additionally, Ms. Perez was paid approximately $70 cash for her Sunday hours.

77.    For a period of six to eight months, there was an increase in the workload, and Ms. Perez was compelled to work twelve (12) hours per day, totaling seventy (70) hours a week. She was not paid the statutorily-mandated rate of pay for these overtime hours.

78.    Defendants willfully and intentionally failed to pay Ms. Perez her lawful wages.

79.    Further, Ms. Perez was not compensated for the legally mandated spread-of-hours pay for hours worked in excess of ten (10) hours a day.

**Specific Allegations of Gladys Gonzales**

80.    On or about September 2011, Defendants hired Ms. Gonzales to work in their warehouse located at 5900 Decatur St. Her duties included packing boxes, affixing tags on clothing, and recording orders.  Her employment ended on or about January 2015.

81.    For the duration of her employment, Ms. Gonzales was a full-time employee of Defendants. She routinely worked over twelve (12) hours a day, six (6) days per week and at least once a week, she stayed late, and worked an additional two hours. Thus, Ms. Gonzales worked approximately seventy-two (72) hours per week.

82.    Despite working approximately seventy-two (72) hours per week, Defendants failed to pay Ms. Gonzales the statutorily-mandated rate of one and one-half her straight-time hourly rate of pay for any hours that she worked each week in excess of forty.

83.    Defendants compensated Ms. Gonzales *in cash only*, during the entire course of her employment, so as to conceal their unlawful wage practices as set forth above.

84.    Ms. Gonzales was paid approximately $250.00 per week, in cash.

85.    For a period of six to eight months, there was an increase in the workload, and Ms. Gonzales was compelled to work fifteen (15) to eighteen (18) hours per day, totaling

approximately ninety (90) hours a week. She was not paid the statutorily-mandated rate of pay for these overtime hours.

86.     Defendants willfully and intentionally failed to pay Ms. Gonzales her lawful wages.

87.     Further, Ms. Gonzales was not compensated for the legally mandated spread-of-hours pay for hours worked in excess of ten (10) hours a day.

88.     Additionally, while in Defendants' employ, Ms. Gonzales was subject to verbal and emotional abuse. Mr. Perez would often pressure her to work faster by saying "hurry up, or you'll get fired." Similarly, when asked to stay late, Ms. Gonzales was warned that is she refused, there would be no job for her the following morning.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the Federal Overtime Pay Requirements, 29 U.S.C. §§ 201-219)*

89.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

90.     Plaintiffs were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one and a half (1 ½) times their regular rate of pay.

91.     These practices were willful and lasted for the duration of all relevant time periods.

92.     These practices are in violation of the FLSA.

93.     By reason of the foregoing, the Defendants are liable in an amount in excess of $100,000.00, plus liquidated damages, costs and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations New York State Overtime Pay Requirements, NYLL §§ 650 et seq.)*

94.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

95.     Plaintiffs were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one and a half (1 ½) times their regular rate of pay.

96.     These practices were willful and lasted for the duration of all relevant time periods.

97.     These practices are in violation of Labor Law §§ 650 *et seq.*

98.     By reason of the foregoing, the Defendants are liable in an amount in excess of $100,000.00, plus liquidated damages, costs and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of New York State Spread-of-Hours Requirement, 12 N.Y.C.R.R. § 142-2.4)*

99.      Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

100.    Plaintiffs were required to work in excess of ten (10) hours a day without being compensated for the legally mandated spread of hours pay.

101.    These practices were willful and lasted for the duration of the relevant time periods.

102.    This practice is in violation of 12 N.Y.C.R.R. § 142-2.4.

103.    By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the Federal Minimum Wage Requirement,29 U.S.C. §206(a))*

104.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

105.    29 U.S.C. §206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.

106.    As described above, the Defendants paid Plaintiff Michael Diaz *less* than the relevant minimum wage requirement.

107.    Similarly, the Defendants paid Ms. Delvalle, Ms. Perez and Ms. Gonzales *less* than the relevant minimum wage requirement.

108.    This practice was in violation of 29 U.S.C. §206(a).

109.    By reason of the foregoing, Plaintiffs are entitled to the minimum rate of pay that they was legally due under the FLSA's minimum wage provisions. Plaintiffs are also entitled to liquidated damages and attorneys' fees for the Defendants' violation of the FLSA's minimum wage provisions.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the New York State Minimum Wage Requirement, NYLL § 652)*

110.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

111.    New York Labor Law § 652 requires that employers compensate their employees at a minimum hourly rate of:

- $7.15 on and after January 1, 2007.
- $8.00 on and after December 31, 2013.
- $8.75 on and after December 31, 2014.
- $9.00 on and after December 31, 2015.

112.    As described above, the Defendants paid Plaintiff Michael Diaz *less* than the relevant minimum wage requirement.

113.    Similarly, the Defendants paid Ms. Delvalle, Ms. Perez and Ms. Gonzales *less* than the relevant minimum wage requirement.

114.    This practice is in violation of Labor Law § 652.

115.    By reason of the foregoing, Plaintiffs are entitled to the minimum rate of pay that they were legally due under the NYLL's minimum wage provisions. Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for the Defendants' violation of the NYLL's minimum wage provisions.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
### *(For Violation of the Federal Anti-Retaliation Provision, 29 U.S.C. § 215)*

116.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

117.    The Fair Labor Standards Act § 215(a)(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... related to" FLSA's provisions.

118.    Plaintiff Persaud made a complaint to his employer about Defendants' violations of the FLSA and New York Labor Law, and was terminated as a result.

119.    Plaintiff Kevin Diaz made a complaint to his employer about Defendants' violations of the FLSA and New York Labor Law, and was terminated as a result.

120.    Plaintiff Viera made a complaint to his employer about Defendants' violations of the FLSA and New York Labor Law, and was terminated as a result.

121.    To the extent that Defendant Isak Perez or other supervisors engaged in the retaliatory actions complained of herein, D&H, AB & SONS GROUP, and Isaac Chetrit are vicariously liable for the retaliatory actions of their employees.

122.    By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorneys fees.

### AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the New York State Anti-Retaliation Provision, NYLL § 215(1))*

123.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

124.    New York Labor Law § 215(1) provides that  "No employer ... shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer...that the employer has violated any provision of this chapter [the Labor Law]."

125.    Plaintiff Persaud made a complaint to his employer about Defendants' violations of the FLSA and New York Labor Law, and was terminated as a result.

126.    Plaintiff Kevin Diaz made a complaint to his employer about Defendants' violations of the FLSA and New York Labor Law, and was terminated as a result.

127.    Plaintiff Viera made a complaint to his employer about Defendants' violations of the FLSA and New York Labor Law, and was terminated as a result.

128.    To the extent that Defendant Isak Perez or other supervisors engaged in the retaliatory actions complained of herein, D&H, AB & SONS GROUP, and Isaac Chetrit are vicariously liable for the retaliatory actions of their employees.

129.    By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorneys fees.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS
*(Michael Diaz's Claim for Violation of New York State Child Labor Laws, NYLL §143)*

130.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

131.    New York Labor Law §143 provides that a sixteen or seventeen-year-old may not work more than eight (8) hours a day or more than forty-eight (48) hours in a week.

132.    When Defendants hired Michael Diaz, he was sixteen years old.

133.    In violation of New York Labor Law §143, Michael Diaz worked more than eight (8) hours a day and more than forty-eight (48) hours in a week.

134.    By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violation of the New York Labor Law § 195 (3))*

135.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

136.    New York Labor Law §195 (3) and the NYWTPA requires that employers furnish employees with wage statements containing specific enumerated criteria on each occasion when the employer pays wages to the employee.

137.    The Defendants did not issue accurate pay stubs to Plaintiffs in violation of New York Labor Law §195 (3) and the NYWTPA.

138.    Specifically, Plaintiffs were not given pay stubs which accurately reflected the number of overtime hours worked.

139.    Further, with regard to the employment of Ms. Delvalle, Ms. Perez, and Ms. Gonzales, Defendants failed to provide *any* wage statement as all.

140.     This practice was and is willful and in violation of New York Labor Law § 195 (3) and the NWTPA.

141.     By reason of the foregoing, Defendants are liable in an amount to be determined at trial plus liquidated damages, costs and attorneys' fees.

## AS AND FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANT ISAK PEREZ
*(For Violations of the Aiding and Abetting Provision of NYSHRL).*

142.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

143.     Defendant Isak Perez knowingly and recklessly aided and abetted the unlawful employment practices against Plaintiffs stated herein, in violation of the NYSHRL.

144.     As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation and benefits, for which they are entitled to an award of monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

2.     A judgment declaring that the practices complained of herein are unlawful and in violation of FLSA, NYLL, and NYSHRL, as detailed herein;

3.     An award to the Plaintiffs for all damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, general and special damages for lost

compensation and job benefits they would have received but for Defendants' improper practices, and liquidated damages;

4.    An award to the Plaintiffs of compensatory damages, including but not limited to damages for emotional pain and suffering where appropriate;

5.    An award to the Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

6.    An award to the Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties;

7.    An award to the Plaintiffs of exemplary damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct where appropriate;

8.    An award to the Plaintiffs for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees; and

9.    Any other and further relief as this Court finds necessary and proper.


Date:   New York, New York
         September 1, 2016

                                        Respectfully submitted,

                                        JOSEPH & NORINSBERG, LLC


                                        By: _____
                                        Jon L. Norinsberg, Esq.
                                        Bennitta Joseph, Esq.
                                        Chaya M. Gourarie, Esq.
                                        225 Broadway, Suite 2700
                                        New York, New York 10007
                                        (212) 791-5396
                                        *Attorneys for Plaintiffs*

TO:
Suzanne Harmon Ziskin
The Ziskin Law Firm, LLP
6268 Jericho Turnpike, Suite 12A
Commack, NY 11725
Phone: (516)-462-1417
Fax: (516)-462-1486
*Attorneys for Defendants*